FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 3 1 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LARRY VERNARD BROWN, | :: | CIVIL ACTION NO. |
| Inmate # GDC 789158, EF 328962, | :: | 1:05-CV-0216-WSD |
| Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| NURSE GLENN MCGREGOR, | :: | PRISONER CIVIL RIGHTS |
| Defendant. | :: | 42 U.S.C. § 1983 |

**ORDER AND OPINION**

Now before the Court are (1) Defendant's Motion for Summary Judgment [Doc. 13] and Plaintiff's twice-docketed Objection to Defendant' s motion [Docs. 14, 18]; and (2) Plaintiff's twice-docketed Motion for Summary Judgment [Docs. 15, 19] and Defendant's Responses to Plaintiff's motions [Docs. 16, 17, 21, 22].

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In his complaint, Plaintiff claims that he broke his hand while playing basketball on February 1, 2004, but was "given no medical treatment until late the next day." [Doc. 1 ¶ IV & attach.]  Plaintiff states that he could not eat, sleep, or bathe because of the "intense pain."  He alleged in his complaint that Defendant joked that his x-ray vision was not that good, and failed to notify the medical

section or to send Plaintiff immediately to a nearby hospital for diagnosis and treatment.  Plaintiff claims that it was "obvious" that his hand was "hurt bad." [Id. ¶ IV & attach. at 1.]  Plaintiff testified in his affidavit that Defendant "only evaluated my left hand.  He stated that it seems to be swollen and bruised and if I have any more swelling and pain to put in a Sick Call Slip."  [Doc. 15 Ex. C (Pl.'s Aff.).]  He stated further in his affidavit:  "The Defendant never instructed me to do anything other than to fill-out a Sick Call Slip.  And that he would place my name in the Emergency Log and Appointment book, to which he did not do." [Id.]

Plaintiff seeks $28 million in compensatory and punitive damages and an order relieving Defendant of his duties.  [Id. ¶ V.]

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings and other documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

AO 72A
(Rev.8/82)

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a summary

judgment motion, a court must "view the evidence and all factual inferences

therefrom in the light most favorable" to the non-movant. Burton v. City of Belle

Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "A court need not permit a case to

go to a jury, however, when the inferences that are drawn from the evidence, and

upon which the non-movant relies, are implausible." Cuesta v. School Bd. of

Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations

omitted). Morever, "the mere existence of *some* alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant bears the initial burden of demonstrating that it is entitled to

summary judgment. Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th

Cir. 1990). It may do so by showing "that there is an absence of evidence to

support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the movant

has properly supported its motion, the non-movant must then "come forward with

specific facts showing that there is a *genuine issue for trial*," i.e., that the

evidence is sufficient to support a jury verdict in its favor. Bailey v. Allgas, Inc.,

3

284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted).  See also

Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir.

1991) (stating that "the non-moving party must come forward with *significant,*

*probative evidence*") (emphasis added).  "[C]onclusory assertions . . . [without]

supporting evidence are insufficient to withstand summary judgment." Holifield

v. Reno, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997).[1]

A motion for summary judgment may be supported or opposed with "the

pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any." Fed. R. Civ. P. 56(c).[2]  "As a general rule,

---

[1] Nevertheless, "courts have been reluctant to apply" to *pro se* prisoners
the Rule 56(e) requirement that a non-movant "cannot rely on his pleadings, but
must file a response that includes other evidence." Lawrence v. Wiley, Civil
Action No. 1:03-CV-2970, 2006 U.S. Dist. LEXIS 4917, at *15-*16 (N.D. Ga.
Jan. 24, 2006).  See also Gonzalez v. Long, 889 F. Supp. 639, 642 (E.D.N.Y.
1995) (allowing *pro se* prisoner additional time to respond to summary judgment
motion, "mindful that *pro se* litigants should be given special latitude" in doing
so, but noting that the "abject failure to comply with the requirements of Rule
56(e) and [the Court's local rule] would normally require the Court to grant" the
motion).

[2] This Court's Local Rules provide additional requirements.  "A movant
for summary judgment shall include with the motion and brief a separate, concise,
numbered statement of the material facts to which the movant contends there is
no genuine issue to be tried.  Each material fact must be numbered separately and
supported by a citation to evidence proving such fact.  The court will not consider
any fact: (a) not supported by a citation to evidence (including page or paragraph

4

the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." <u>Property Mgmt. & Inv., Inc. v. Lewis,</u> 752 F.2d 599, 604 n.4 (11th Cir. 1985).

---

number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts." N.D. Ga., LR 56.1.B.(1). The response to the motion for summary judgment "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." N.D. Ga., LR 56.1.B.(2)a.(1). "This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1)." N.D. Ga., LR 56.1.B.(2)a.(2).

AO 72A
(Rev.8/82)

## III. CONTENTIONS OF THE PARTIES

### A.   Defendant's motion for summary judgment

### 1.   Defendant's statement of undisputed material facts

Defendant sets forth the following material facts.[3]  [Doc. 13

"Defendant's Statement of Undisputed Material Facts" (hereinafter

"Def.'s Facts").]  On February 1, 2004, Plaintiff, a resident of the G2

Mental Health Dormitory at Lee Arrendale State Prison, injured his

left hand while playing basketball.  [Def.'s Facts ¶¶ 2-3; see Doc. 1

(Plaintiff's Complaint) & Doc. 13 Ex. C (Wilson Aff.) ¶ 5.]  During

evening pill call, between 5:38 and 6:24 p.m., Defendant examined

Plaintiff's hand "and observed that [the] fourth finger on his left hand

appeared swollen,"[4] "but did not observe any blood or visible

displacement," and "was unable to determine the extent of the

---

[3]  Plaintiff did not respond specifically to Defendant's Statement of
Undisputed Material Facts.  However, the Court has reviewed Plaintiff's summary
judgment pleadings, including his affidavit in support of Plaintiff's summary
judgment motion and his Statement of Undisputed Material Facts.  Where
Plaintiff stated facts which disputed a fact or facts Defendant claims are
undisputed, the Court considered the fact or facts disputed.

[4]  Defendant's affidavit indicates that "the area surrounding . . . [the finger]
was swollen and painful when touched."  [Doc. 13 Ex. A ¶ 8.]

injury."  [Id. ¶ 4; see Doc. 13 Ex. A (Def.'s Aff.) ¶¶ 8-9 & Wilson

Aff. ¶ 8.]  "Based upon Defendant's medical experience in treating

minor injuries, and because Plaintiff waited until pill call to seek

medical attention, Defendant did not believe that Plaintiff required

immediate medical attention."  Instead, "Defendant advised Plaintiff

to ice the affected area with an ice pack, to keep his hand elevated,

and to take Tylenol as needed [for] pain and swelling."[5]  Defendant

also advised Plaintiff to seek medical attention in the morning,

"when someone would be available to x-ray his finger."  [Def.'s

Facts ¶ 5; see Def.'s Aff. ¶ 9.]

Defendant had intended to place Plaintiff's name in the log and

appointment book for the following morning, but he "[i]nadvertently" failed to do

so.  [Def.'s Facts ¶ 6; see Def.'s Aff. ¶ 10.]  On the following morning, February

2, 2004, Plaintiff complained about his injured finger, and he was evaluated by

the medical staff at approximately 9:30 a.m., so that Defendant's failure to log

---

[5] Plaintiff stated in his affidavit that all he was told to do was to fill out a
Sick Call Slip, but did attach to his summary judgment motion a medical record
showing he was told to elevate his hand, apply ice, take Tylenol as needed and go
to sick call on Monday.  [Aff., p. 1-2 (15, Ex. C)].

7

Plaintiff's injury did not delay his medical treatment on that morning.  [Def.'s Facts ¶¶ 7-8; <u>see</u> Doc. 13 Ex. B (Campbell Aff.) ¶ 8 & Def.'s Aff. ¶ 10.]  The Standard Operating Procedures for the Georgia Department of Corrections provide that corrections officers "have ready access to pain relievers" to address minor inmate injuries, and require that "all inmate requests for medical services, including pain relievers such as Tylenol, . . . be noted in the security log by the on-duty corrections officer."  However, the security logs for the G2 dormitory for February 1-2, 2004, "show that Plaintiff did not approach the on-duty officer to complain of pain, to request Tylenol or to request any medical services."  [Def.'s Facts ¶¶ 9-10; <u>see</u> Wilson Aff. ¶¶ 6-7, 9.]

Plaintiff received medical attention during morning pill call on February 2, 2004, at approximately 9:30 a.m., at which time Nurse Practitioner Campbell "noted that Plaintiff's distal metacarpal of his fourth finger was painful to the touch" and that Plaintiff had difficulty moving the finger without pain, although it "appeared to be in good alignment."[6]  An x-ray revealed a fracture and "a slight, 2

---

[6] The finger bones, or phalanges, are connected to the bones in the hand, or carpus, via the metacarpal bones.  The fourth "distal metacarpal" attaches to the lower, or proximal, phalanges bone of the fourth or "ring" finger. <u>See</u> http://en.wikipedia.org.

8

mm offset, with no other apparent abnormalities." [Def.'s Facts ¶¶ 11-12;
see Campbell Aff. ¶¶ 8-9.] Nurse Campbell, who is qualified to treat simple
fractures, placed a cast and a "buddy splint" on Plaintiff's left hand to keep the
damaged finger immobilized, and advised Plaintiff how to care for his hand while
it healed. "Nurse Campbell conducted five followup evaluations of Plaintiff's
injury between the dates of February 6, 2004, and April 5, 2004." Based on an x-
ray taken of Plaintiff's hand on April 5, 2004, upon removal of his cast, Nurse
Campbell concluded that the fracture "had healed satisfactorily" and that Plaintiff
"had not suffered any permanent damage." [Def.'s Facts ¶¶ 13-14; see Campbell
Aff. ¶¶ 5, 9-15.]

### 2.    Defendant's arguments

While acknowledging that Plaintiff was in "some pain and discomfort" on
the evening of February 1, 2004, and there was "some localized swelling to the
finger," Defendant argues that the lack of bleeding or of a noticeable dislocation
or fracture indicated that Plaintiff was not suffering from "an obviously serious
medical need that clearly required immediate medical attention." [Doc. 13 Supp.
Br. at 13.] "[T]here was no clear indication to Defendant that the finger was
actually broken, and not merely sprained or hyper-extended," and at no time on

9

February 1-2, 2004, "did Plaintiff request medical assistance or pain relief medication from corrections personnel in his dorm." [Id. at 13-14.] Defendant notes that Plaintiff has provided no "verifying medical evidence to establish the detrimental effect of delay" in the treatment of his finger.[7] On the contrary, Nurse Campbell, who is "authorized to cast *simple* fractures," treated Plaintiff's injury on the following morning, and Plaintiff's finger "ultimately healed satisfactorily" without "permanent damage." [Id. at 14.] Plaintiff does not allege the basketball injury did not heal or that he suffers any present effects of it.

Defendant also argues that, even if the Court should determine that Plaintiff suffered from a serious medical need, Plaintiff's "claim of deliberate indifference still fails because [he] has not shown that Defendant's actions amounted to more than mere negligence." [Id. at 15.] Defendant claims that, "by advising Plaintiff to ice and elevate his hand and to take Tylenol for pain," he provided appropriate medical care for Plaintiff's finger, and that his failure to log Plaintiff's injury was accidental, not deliberate. [Id. at 16.] Finally, Defendant argues that he is entitled to qualified immunity from Plaintiff's damage claims. [Id. at 18-19.]

_____

[7] Plaintiff estimates that treatment was delayed for approximately 14 hours. [See Doc. 14 at 1.]

**B.     Plaintiff's response**

Plaintiff has not responded specifically to each of Defendant's material facts, as required by LR 56.1.B(2), supra. [See Doc. 14.] Instead, Plaintiff's response to Defendant's motion for summary judgment is generally a restatement of his claim that Defendant ignored his "immense pain" on the evening of February 1, 2004, "that was so painful that he was unable to sleep," and also ignored the "continuous swelling" in his hand, "which proceeded approximately" 14 hours before he was treated the following day. [Id. at 1-2.] With respect "to the so-called treatment by the Defendant," Plaintiff states that Defendant "would not even put a Splint on [his] hand, an Ice-pack, nor give him a Tylenol for pain," and Defendant also failed "to inform the Medical Staff or notify a P.A. or Doctor in an immediate diagnosis and treatment situation." [Id. at 2.]

**C.     Plaintiff's motion for summary judgment**

In support of his own motion for summary judgment, Plaintiff does not list facts separately, with specific supporting citations to the record, as required by LR 56.1.B(1), supra. [See Doc. 15 Ex. A.] Instead, Plaintiff states, in summary fashion, that at all times relevant to this action he was a resident of the G-2 Mental Health Dormitory at Lee Arrendale State Prison; that he injured his left

11

hand during a basketball game on Sunday evening, February 1, 2004; that, during

pill call that same evening, he informed Officer Russell of his injury, who then

notified Defendant, the Nurse on duty; that Defendant administered no medical

attention or treatment to his hand, did not check his vital signs, and did not give

him Tylenol for pain; and that Defendant instead "only made casual jokes about

[his] hand" and promised to place Plaintiff's name in the emergency log and

appointment book, which he did not do.  [Id.; see Doc. 15 Ex. C (Pl.'s Aff.).]

However, Plaintiff acknowledges in his affidavit, which is signed but not

notarized, that Defendant "evaluated [his] left hand" and told him that his hand

"seems to be swollen and bruised and if [Plaintiff has] any more swelling and pain

to put in a Sick Call Slip."  [Doc. 15 Ex. C (Pl.'s Aff.).]  Plaintiff argues that this

total lack of medical attention and treatment over a period of 14 hours for a

medical condition that was causing him severe pain constituted deliberate

indifference to his serious medical need.  [Doc. 15 Supp. Br. at 2-5.]

**D.**     **Defendant's response**

In response to Plaintiff's statement of undisputed facts and to the

allegations set forth in Plaintiff's supporting brief, Defendant agrees that he did

not provide Plaintiff with Tylenol because it "is readily available to all inmates

12

from the on-duty officer," but he disputes the allegation that "he did nothing else other than look at the hand or that he did not provide Plaintiff any medical treatment."[8] [Doc. 17 ¶ 2.]  Defendant argues that Plaintiff is not entitled to summary judgment because he has alleged only a "difference in medical opinion" between himself and Defendant, or, at most, medical negligence, neither of which rises to the level of deliberate indifference to a serious medical need.  [Doc. 16 at 3-4.]

## IV.  DISCUSSION

### A.      Deliberate indifference to a serious medical need

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).  The Eighth Amendment prohibits indifference to a serious medical need so deliberate that it "constitutes the unnecessary and wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal

---

[8] Defendant disputes certain other facts alleged by Plaintiff, but states that they are not material to the outcome of this case.  [Doc. 17 ¶¶ 2-3.]

AO 72A
(Rev.8/82)

quotations omitted). To demonstrate deliberate indifference, a plaintiff must show both "an objectively serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). See also Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (noting that "a 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").

A plaintiff may establish deliberate indifference by showing that a prison official failed or refused to provide care for his serious medical condition, delayed care "even for a period of hours," chose "an easier but less efficacious course of treatment," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). See Hill, 40 F.3d at 1187 (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain," but that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical

14

treatment to succeed") (citation and internal quotations omitted); <u>Brown v.</u>

<u>Hughes</u>, 894 F.2d 1533, 1538 (11th Cir. 1990) (stating that "a deliberate delay on

the order of hours in providing care for a serious and painful broken foot is

sufficient to state a constitutional claim").

Negligence, however, even rising to the level of medical malpractice, does

not constitute deliberate indifference.  <u>McElligott</u>, 182 F.3d at 1254.  <u>See also</u>

<u>Hinson v. Edmond</u>, 192 F.3d 1342, 1345 (11th Cir. 1999) (noting that it is well-

settled that "medical malpractice–negligence by a physician–is insufficient to

form the basis of a claim for deliberate indifference"), <u>amended by</u> 205 F.3d 1264

(2000); <u>Adams v. Poag</u>, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere

negligence in diagnosing or treating a medical condition is an insufficient basis"

for a deliberate indifference claim).  Nor does a simple disagreement over a

diagnosis or course of treatment constitute deliberate indifference.  As long as the

medical treatment provided is "minimally adequate," a prisoner's preference for a

different treatment does not give rise to a constitutional claim.  <u>See Harris v.</u>

<u>Thigpen</u>, 941 F.2d 1495, 1504-05 (11th Cir. 1991); <u>see also Adams</u>, 61 F.3d at

1547 (concluding that the medical provider's "failure to administer stronger

15

medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983").

**B.** <u>**Analysis**</u>

The following facts are undisputed.  Plaintiff injured a finger on his left hand while playing basketball on February 1, 2004.  Defendant evaluated the finger at pill call that evening, between approximately 5:30 and 6:30 p.m., and noticed that it was swollen.  There were no other obvious symptoms, such as bleeding or severe displacement.  Defendant declined to refer Plaintiff for immediate medical attention.  Defendant joked that he did not have "x-ray eyes" and told Plaintiff that someone would be available to x-ray his hand the following morning.  Defendant advised Plaintiff to place an ice pack on his hand, to elevate it, and to take Tylenol as needed for pain, and further advised Plaintiff to put in a Sick Call Slip if the swelling or pain worsened.  Defendant did not personally provide Plaintiff with an ice pack or Tylenol.  Overnight, Plaintiff did not seek medication for pain or further medical attention.  At pill call the following morning, February 2, 2004, Plaintiff advised medical personnel of his injured finger.  At approximately 9:30 a.m., an x-ray of Plaintiff's left hand revealed a slight fracture and displacement of his fourth distal metacarpal, which was treated

16

by placing a cast and buddy splint on Plaintiff's hand. By April 5, 2004, two

months later, Plaintiff's hand had healed, with no permanent or other current

effect.

Plaintiff claims that he was in "immense pain" as a result of his broken

finger, whereas Defendant asserts that Plaintiff's symptoms were not so severe

that the overnight delay in medical treatment was inappropriate. Defendant states,

and Plaintiff does not dispute, that after Defendant examined Plaintiff's hand on

the evening of February 1, 2004, Plaintiff did not seek pain medication from the

officer on duty in his dormitory and did not complain to any prison official about

his hand until pill call the following morning. This Court finds it "implausible"

that Plaintiff was in such "immense pain" that he was unable to sleep on the night

of February 1-2, 2004, yet did not seek further medical assistance or at least pain

medication for his hand, which was readily available. See Cuesta, 285 F.3d at

970.

Defendant might have, and maybe should have, taken more comprehensive

action on the evening of February 1, 2004, to determine the extent of Plaintiff's

injury. The failure to do so may, at most, constitute negligence. However, such

negligence, if it occurred, does not violate the Eighth Amendment. See

17

McElligott, 182 F.3d at 1254 (noting that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").  Defendant cannot be held liable for a constitutional violation when, at the time he examined Plaintiff's hand on the evening of February 1, 2004, the only outward signs indicating the severity of Plaintiff's injury were swelling and pain; Defendant advised Plaintiff to seek medical attention if the swelling or pain worsened; and Plaintiff failed to do so or to inform anyone of his condition until pill call the following morning.

Defendant has properly supported his motion for summary judgment with evidence demonstrating that his actions – including the failure to seek immediate medical attention for Plaintiff, to provide Plaintiff with an ice pack or Tylenol, or to log Plaintiff's condition into the appointment book – constituted, if anything, medical negligence, not the deliberate infliction of pain.  Moreover, there is no evidence that the delay in treating Plaintiff's hand caused any permanent damage. See Hill, 40 F.3d at 1187.  Plaintiff, on the other hand, has not come forward with any evidence to establish an essential element of his case, upon which he would bear the burden of proof at trial -- namely, that the condition of his hand at the time Defendant examined it constituted a serious medical need, i.e., "one that was

18

so obvious that even a lay person would easily [have] recognize[d] the necessity for a doctor's [immediate] attention." See id.  Accordingly, Defendant is entitled to summary judgment in this action.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 13] is **GRANTED**, Plaintiff's Motion for Summary Judgment [Docs. 15, 19] is **DENIED**, and the instant action is **HEREBY DISMISSED**.

**IT IS SO ORDERED**, this 31st day of July, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

19